

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

12 SEP -6  PM 2: 42

CLERK-ALBUQUERQUE

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JESSE K JOHNSON

     Plaintiff,

v.                                          No. 1:12-cv-00877-MV-RHS

LAW OFFICES OF FARRELL & SELDIN;
CITIBANK N.A.

     Defendants

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT FARRELL & SELDIN'S MOTION TO DISMISS

### I  Plaintiff's Allegations Support Violations Of The FDCPA

Plaintiff did allege sufficient facts to maintain a claim under the Fair Debt Collection Prac-
tices Act ("FDCPA"). Law Offices of Farrell & Seldin (hereinafter "Farrell & Seldin) has
asserted that the complaint filed against it is a "merely a recitation of the procedural history
of the state court action." *(See Docket No. 8 p. 4)* However, debt collectors, even attor-
ney debt collectors collecting a debt through purely legal activities are still subject to the
regulations imposed by the FDCPA. "...[T]he Act defines the "debt collector[s]" to whom
it applies as including those who "regularly collec[t] or attemp[t] to collect, directly or indi-
rectly, [consumer] debts owed or due or asserted to be owed or due another." §1692a(6). In
ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through
legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts."
*(Heintz v. Jenkins, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995))*

1

In *Docket No. 1-1* ¶*2*, Plaintiff alleges that he is a consumer as defined by the FDCPA and in *Docket No. 1-1* ¶*3* he alleges that Farrell & Seldin is a debt collector under the FDCPA. While he does not state so explicitly in the complaint, it is implied that the alleged debt was a consumer debt. *See Citibank v. Johnson D-202-CV-201104731* (hereinafter "state action" or "Citibank v. Johnson") While certainly this court should not bend over backwards to help the Plaintiff because he is Pro Se, and it should not advocate for him as was correctly pointed out by Farrell & Seldin *(Docket No. 8 p. 3)*, this honorable court is not supposed to hold Pro Se litigants to the same technical standards when it comes to pleadings. "A document filed pro se is "to be liberally construed," Estelle, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,"" *(Erickson v. Pardus, 551 U.S. 89, 91 (2007))* Indeed, the state action against the Plaintiff was over an alleged credit card debt *(See Docket No. 8 p. 2)*, and there were no claims that it was a business account. Furthermore, Plaintiff is in the process of amending his complaint, and any potential issues arising from this will be rendered moot.

## (A)  Plaintiff's Allegations Support Violations Of 15 U.S.C §§1692e, 1692f

Plaintiff need not prove that he was fooled by any of Farrell & Seldin's statements. This court uses the "least-sophisticated consumer" standard when evaluating FDCPA claims under §1692e and §1692g, though it sees little difference between it and the "unsophisticated consumer" standard used in the $7_{th}$ Circuit. *(See: Russey v. Rankin, 911 F. Supp. 1449 (D.N.M. 1995))* Accordingly, Plaintiff need only show that either a least sophisticated, or at the very least, an unsophisticated consumer would have been fooled. "The Act is aimed at protecting consumers in general from abusive debt collection practices and the test is how the

2

least sophisticated consumer - one not having the astuteness of a "Philadelphia lawyer" or even the sophistication of the average, everyday, common consumer understands the notice he or she receives." *(Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir.1996))* "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *(Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir.1993))* In short, even the village idiot is afforded protections under the FDCPA.

In Plaintiff's mere recitation of the procedural history of the state case, he made multiple allegations indicating deceptive and unconscionable communications made by Farrell & Seldin. Unfortunately, by so casually dismissing so many of the Plaintiff's claims and by not offering significant authority on how the courts interpret the FDCPA, Farrell & Seldin has placed the Plaintiff in a position where he must lay out a significant portion of his claims, along with the authorities that support why his allegations add up to violations of the FDCPA.

(1) In *Docket No. 1-1 ¶¶11, 15, 16, 28, 37 and 43*, Plaintiff alleged specific dates, communications and facts, that when taken together, indicate that Farrell & Seldin had not actually reviewed enough of the documents in detail sufficient for an attorney to have exercised his professional judgment regarding whether or not a dunning letter had been sent. Plaintiff was presented with no further evidence other than what was attached to the complaint in the state action against him, despite the evidence being asked for during the discovery process. The date on the affidavit signed by Shayna Gier *(See Citibank v Johnson, Docket No. 1-1 ¶¶11 and 15)* indicates that it was created after the second dunning letter received by Plaintiff. Given that "the use of an attorney's signature implies - at least in the absence of language to the contrary - that the attorney signing the letter formed an opinion about how to manage the case of the debtor

3

to whom the letter was sent," *(Clomon v. Jackson)* Farrell & Seldin's position that it employs attorneys who are licensed to practice law in the State of New Mexico *(See Docket No. 8 p. 5)*, which is not disputed by the Plaintiff, is insufficient to conclude that these allegations are not sufficient to maintain a 1692e(3) claim. *(Also see Boyd v. Wexler, 275 F.3d 642, 644 (7th Cir. 2001))*[1] This is true even if the fact that law firms can and do hire persons not licensed to practice law is ignored. Communications can come from those non-attorneys rather than the attorneys.

(2) In *Docket No 1-1 ¶¶14 and 17*, Plaintiff alleged that the balance listed on the statement incorporated via reference to the complaint in the state action against him was $4479.82, that the credit limit was listed as $2600.00, and the amount overdue was listed as $894.52. *(See Citibank v Johnson)* When the credit limit is added to the amount overdue, the sum should be the balance. However, $2600.00 + $894.52 $\neq$ $4479.82. This would not only enough to confuse a least sophisticated consumer, it is enough to confuse a mathematician, and is an allegation that Farrell & Seldin misrepresented the amount of the debt in violation of §1692e(2)(A). Furthermore, "because the Act [FDCPA] imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *(Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir.1996))*

(3) In *Docket No. 1-1 ¶18*, Plaintiff alleged that amount listed as due in the fourth dunning letter he received from Farrell & Seldin had added $181.00 *(See Docket No. 1-1 p. 22)*

---

[1] "Before a follow-up letter can be responsibly approved by a lawyer, he must inspect the file to determine that there has been no partial payment or other response from the debtor, and, if interest on the debt is sought by the creditor, to determine how much interest is owing. See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C., 214 F.3d 872, 875-76 (7th Cir.2000). This can be a complicated calculation. Duffy v. Landberg, 215 F.3d 871, 875 (8th Cir.2000). In the case of a bounced-check follow-up letter, if statutory penalties are sought the lawyer must determine whether the grace period for making good on such a check has expired." *(Boyd v Wexler)*

to the amount listed as due all in previous letters *(See Docket No. 1-1 ¶¶19-21)* and in the state action taken against him. *See Citibank v Johnson.* It costs $132.00 to file a civil complaint in New Mexico's District Courts, and $49.00 is not an unreasonable fee for service of process. The sum of those two dollar amounts is also $181.00. In the dunning letter sent to Plaintiff by United Collection Bureau *(See Docket No. 1-1 p. 23)* the amount allegedly owed by Plaintiff was $4479.82 again. Plaintiff has alleged a false and misleading misrepresentation of "the character, amount, or legal status of any debt," another violation of §1692e(2)(A).

(4) In *Docket No. 1-1 ¶43,* Plaintiff alleged that Farrell & Seldin filed over 3,000 cases from February 1, 2011 through May 2, 2011 in New Mexico's District Courts. *See Docket No. 1-1 pp 16-17 to see how Plaintiff determined this.* That is over a 91 day period, and four attorneys working 24 hours a day, 7 days a week doing nothing but reviewing cases to see if they are fit be filed with the courts would have spent an an approximate average of 2 attorney-hours and 55 attorney-minutes per case. On 60 hour work weeks where four attorneys were engaged in nothing but reviewing cases to see if they should be filed, that works out to 62 attorney-minutes per case. That is making no allowences for actually litigating the cases once they have been filed, much less other activities, such as manegerial duties. Given those numbers, the point should be brought up that the volume of communications sent out by an attorney debt collector can be used to aid in the determination of whether or not there was a reasonable amount of time spent reviewing the the alleged debts before sending those communications out to consumers. *(Boyd v. Wexler, Avila v. Rubin, 84 F.3d 222 (7th Cir.1996))* Plaintiff did not file the list of cases with the complaint due to page limit restrictions in New Mexico's District

5

Courts, but he does posess such a list and its validity can certainly be hashed out during the Discovery Process.

In *Docket No 1-1 ¶47*, Plaintiff alleged that Citibank N.A., (hereinafter "Citibank") through its subsidiary, Citicorp Credit Services (USA), does not actually perform a diligent review of its documents prior to a lawsuit being filed. Plaintiff pointed to a blog entry *(See Docket No. 1-2 pp. 11-14, Docket No. 1-3 pp. 1-13)* where the author identifies herself as Shayna Gier, the same name of the person who signed the affidavit in the state action against the Plaintiff. She also identified her job title as a "Citicards Recovery Media Specialist" and her location as Kansas City, MO. The blog itself, throughout multiple entries, describes a quota system (to meet the quota was referred to as to "make goal,") wherein an employee who failed to produce 37 affidavits per hour (during late 2009) could be placed on an overtime freeze and denied a pay raise. *See Docket No. 1-3 p. 12. and Docket No. 10 §IV (B) for further discussion.* While Plaintiff is well aware that, although a simple blog is not enough to win at trial with this issue, it is enough to provide a ground for a reasonable belief that his allegations could be true and it is certainly enough to provide directions of inquiry during the discovery process. If this practice is true and Farrell & Seldin was unaware of it, it further shows that they failed to ensure that what they filed with the courts was reliable. If they were aware of it, it is even more serious.

The error pointed out in *(2) supra* (the discrepancy between the credit limit, the account balance and the amount over the credit limit) could have been used to cast serious doubt on the reliability and admissibility of the statement, and could have been caught

6

had meaningful attorney review occurred. In *Docket No. 1-1 ¶¶28 and 37*, Plaintiff also alleged that he never received a response to his RFPs, which specifically included requests for documents that should have been reviewed prior to the state action against him[2]. Plaintiff has further evidence of unreliable Citibank records *(See Exhibit A)*, in the form of a letter from Citibank to him that lists the same 16 digit account number listed on the dunning letters by Farrell & Seldin, yet instead of identifying the account as a "CITI VERIZON GOLD" as the dunning letters sent by Farrell & Seldin do, *(See Docket No 1-1 pp. 19-22)* it identifies the account as an "Citi® Diamond Preferred® Rewards American Express®" account. All of these averments, plus the Exhibit A, if taken as true and when taken together, point to Farrell & Seldin not having given an appropriate amount of attorney review prior to sending the last three dunning letters alleged by Plaintiff, and prior to filing the state action against the Plaintiff, and, as a result, the court could find that the final two dunning letters, as well as the summons and complaint[3] served upon the Plaintiff were in violation of §1692e(3).

In the alternative, it is possible that, even without meaningful attorney involvement, somebody at Farrell & Seldin was acting as an attorney for the purposes of the FDCPA when the complaint was filed. This, however, still could be a general §1692e violation, as a least sophisticated, and even a moderately sophisticated consumer could conclude that an attorney had reviewed the pertinent facts surrounding an account upon being served a summons and complaint. Regardless of the case, Plaintiff maintains that an attorney filing a lawsuit without giving any meaningful review to the account in ques-

---

[2] See footnote 1.

[3] "This Court thus concludes that, in cases such as here, where an attorney commences suit in so uninformed a manner that he is ignorant even as to what law governs his suit, it cannot be said that he has undertaken a level of review sufficient to satisfy even the most general requirements applicable to attorney conduct, let alone the more focused review requirements established by the FDCPA." *Miller v Upton, Cohen & Slamowitz 687 F.Supp.2d 86 (ED NY 2009)*

tion is a violation of §1692f.  "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *(Crossley v. Lieberman, 868 F.2d 566, 570 (3d Cir.1989))* Certainly if an abusive attorney letter is egregious, an abusive summons and complaint is going to be far worse.  Unlike a dunning letter, which may prompt a savvy consumer to play a cat-and-mouse game of validation and cease & desist letters, a summons and complaint requires significant action on the consumer's part to avoid a default judgment.

(5) In *Docket No.  1-1 ¶¶28, 29, 30 and 37*, Plaintiff made allegations sufficient to support claims that Farrell & Seldin was gaming the discovery process in the state action against him. Specifically, he stated that he was called by an Farrell & Seldin employee, who requested an extension on the discovery deadline and stated that the responses to his RFPs and Requests for Admissions were ready and it was the Interrogatories that they needed more time on. He then alleged that he sent them a letter detailing the extension he was giving them, and specified that only allowed for an extension to their response to his Interrogatories. *(See Docket No.  1-2 p.  1)* In this letter, which was incorporated in his complaint through reference, Plaintiff also noted that there was some confusion as to the extension being asked for, as it would have pushed the deadline 4 days beyond the date that the arbitration was scheduled.

One event that never occurred, and thus was not alleged, was a phone call from Farrell & Seldin soon after they received the letter, with Farrell & Seldin stating that there had been a mistake or miscommunication, and what they needed was an extension for their response to the RFPs. Certainly, such a mistake or miscommunication could be

considered harmless and the result of a clerical error or something similar, but only if it is dealt with in a timely manner once discovered. In *Docket No. 1-1 ¶¶and Docket No. 1-2 p 3* Plaintiff alleged that the day the response to Plaintiff's RFPs was due, he received another phone call from an Farrell & Seldin employee who then requested an extension on the RFPs. Plaintiff maintains that by Farrell & Seldin telling him that the RFPs were ready, then later asking for an extension on them, they engaged in deceptive practices and violated §1692e, regardless of the reason or intent. Furthermore, He also maintains that by playing games in the discovery process, Farrell & Seldin was attempting to take advantage of Plaintiff's lack of experience regarding court procedures, a potential 15 U.S.C. §1692f violation.

(6) In *Docket No. ¶¶9, 10, 11, 15, 28 and 37*, Plaintiff alleges facts supporting the supposition that there had been no meaningful attorney involvement in the production of at least two of the dunning letters sent to him. Plaintiff also alleged in *Docket No. 1-1 ¶¶45 and 46* that Farrell & Seldin was not licensed as a debt collector as required by *NMSA 1978 §61-18A-4*, and yet should have been. While the issue of whether or not Farrell & Seldin needs to be licensed is discussed in *§IV infra*, this district has held that violations of state law do trigger violations of the FDCPA. "Moreover, this district has held that collection activity which violates state law violates the FDCPA. See Kolker, 750 F.Supp. at 472 (under New Mexico law, conduct constituted unauthorized practice of law in violation of FDCPA); see also Gaetano v. Payco of Wisconsin, Inc., 774 F.Supp. 1404, 1415 (D.Conn.1990) (faced with a parallel Connecticut state statute, district court held that unlicensed collection activity within a state violated various provisions of the FDCPA); Kuhn, 865 F.Supp. 1443 (same). Therefore, this Court

9

finds that Defendant TCA violated 15 U.S.C.  1692e, 1692e(5), 1692e(10) and 1692f by engaging in collection activity in this state without a license..." *(Russey v. Rankin) supra* Should Plaintiff's claim that Farrell & Seldin should have been licensed as a Collection Agency have merit, Plaintiff has alleged sufficient facts to support claims under §§1692e, 1692e(5), 1692e(10) and 1692f.

## (B)  Farrell & Seldin Overshadowed Right To Dispute (15 U.S.C. §1692g(b))

In *Docket No.  1-1 ¶10*, Plaintiff clearly stated that the first dunning letter sent to him by Farrell & Seldin *(See Docket No.  1-1 p.  19)* contained a disclaimer: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Even with the notification of his right to dispute the debt or request validation in this letter, Plaintiff never disputed the alleged debt, never requested validation of the alleged debt, nor did he claim to have done so in his complaint. In fact, Plaintiff agrees with Farrell & Seldin that the letter, as submitted and when only considered by itself, shows that Farrell & Seldin was in compliance with the FDCPA's requirement of sending alleged debtors a letter notifying them of their right to dispute, *(See Docket No.  8 p.  6)* even if it did violate other portions of the FDCPA. However, the letter is not the only letter that was sent to Plaintiff during the allowed 30 day validation period, and should not be considered only by itself.

Plaintiff also clearly alleges *(See Docket No.  1-1 ¶¶11, 12)* that the second dunning letter received by him *(See Docket No.  1-1 p.  20)* was signed and failed to include the disclaimer regarding a lack of attorney involvement. A least sophisticated consumer would very well believe that it was a letter from an attorney, regardless of whether or not it was. Plaintiff also alleged clearly *(See Docket No.  1-1 ¶12)* that the letter contained the following text: "...our

10

client will consider all its legal remedies." When such a statement is included on law firm letterhead, and then followed up with "Our client has authorized us to settle this account with you for a single lump sum payment of 75% of the balance due, *payable in ten days of the date of this letter* (emph added)" a least sophisticated consumer could very well be fooled into believing that he or she would get sued if the offer was not accepted within "ten days of the date" of the letter. This is not because it simply offers a settlement that must be accepted within "ten days," it is because it says "ten days" on law firm letter head, in conjunction with "...our client will consider all its legal remedies," and "[a]n unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *(Avila v. Rubin, 84 F.3d 222, 228-29 (7th Cir.1996))*

The date on this second letter also indicates that it was printed and sent well within the 30 day validation period required by 15 U.S.C. §1692g. *(See Docket No 1-1 pp. 19-20)* Overshadowing a consumer's right to dispute a debt is prohibited by §1692g(b):

> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Certainly, a dunning letter sent to an alleged debtor counts as both a collection activity and also as a communication for the purposes of the FDCPA. It is also not unreasonable that a the right to dispute would be overshadowed in the mind of a least sophisticated consumer who received such a letter. Plaintiff has alleged facts maintain his claim that Farrell & Seldin's actions did violate §1692g(b).

11

## II  Plaintiff Has Alleged Unfair Trade Practices

Plaintiff has alleged facts sufficient to support New Mexico Unfair Trade Practice Act ("UPA") claims for the same reasons his FDCPA claims should stand. As Farrell & Seldin has pointed out, the elements of deceptive practices claims under the UPA are "(1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person. See generally NMSA 1978, 57-12-2(D) (2003); Stevenson v. Louis Dreyfus Corp.," 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991). When NMSA 1978 §57-12-2(D) is actually examined, as the court suggests, it also includes representations made during the collection of debts:

> "[U]nfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person and includes...

Once a deceptive communication is proven under the FDCPA, the Plaintiff need only prove that the communication was "knowingly made" for the purposes of the UPA.

> Given the corresponding provisions of the UPA and the FDCPA, all but the second of these elements has been established in my analysis of the FDCPA claims. Thus, the determinative issue on Plaintiff's UPA claim is whether the UPA's "knowing" requirement has been established as a matter of law.

12

*(Russey v Rankin)* Indeed, Farrell & Seldin has not claimed that it unknowingly sent any of the communications alleged by the Plaintiff. Accordingly, should any of the Plaintiff's FDCPA claims stand, so should his UPA claims.

Plaintiff has not only alleged that Farrell & Seldin has engaged in deceptive practices, but Plaintiff has also made allegations of unconscionable trade practices under the UPA, specifically, NMSA 1978 §§57-12-2E and 57-12-2E(1):

> [U]nconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts that to a person's detriment:
> (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree;

Farrell & Seldin has failed to address this. Certainly any unconscionable act committed during litigation could be considered an unconscionable act under the meaning of the UPA. Plaintiff's allegations of Farrell & Seldin filing over 3,000 cases in a 91 day period *(See Docket No. 1-1 ¶43)* are allegations that they have vastly more experience litigating cases than the person's they typically sue. Any attempts to game the system could easily be considered taking advantage of a disparity in experience to a grossly unfair degree.

## III  Plaintiff Suffered Severe Anxiety

Farrell & Seldin points out the elements required for proving a claim under Intentional Infliction of Emotional Distress ("IIED"). On these elements, it is correct. "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe;

13

and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Hakkila v. Hakkila, 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct.App.1991)* Let us examine and compare these elements with the Plaintiff's complaint:

(1) The conduct in question was extreme and outrageous: Plaintiff has alleged facts sufficient to support the contention that, as a matter standard policy, Citibank filed the state action against him without first diligently reviewing its records, and that Farrell & Seldin also failed to review the merits of the case before acting as Citibank's agent. If that alone is not enough to be considered extreme and outrageous, Plaintiff did inform Citibank's attorney that he was mentally ill. *See Docket No. 1-1 ¶25.* Citibank, through its agents, continued to litigate the case after this, attempted to game the discovery process *See §I (A) (5) supra.* Furthermore, Plaintiff alleged that Citibank, through its agent, Farrell & Seldin never did respond to his Request for the Production of Documents. *See Docket No. 1-1 ¶37* This is an indication that they never had the evidence required to win, yet they continued when they knew or should have known that "liability may result if wrongdoer knows victim is "peculiarly susceptible to emotional distress, by reason of some physical or mental condition."" *Stock v. Grantham, 964 P.2d 125, 136 (N.M. Ct. App. 1998)*

(2) The conduct of the defendant was intentional or in reckless disregard of the plaintiff: Plaintiff has alleged reckless conduct. Not only has he alleged that he had informed one of Farrell & Seldin's attorneys that he had a mental illness, he also alleged that Citibank's agent, Farrell & Seldin filed more than 3,000 cases over a 91 day period *(See Docket No. 1-1 ¶43, §I (A) (4) supra)* that ended on the day the state action against him was filed in the 2nd Judicial District Court of New Mexico. Plaintiff has

also alleged that neither Citibank nor its agent, Farrel & Seldin diligently review their cases prior to suing.  Indeed, a high volume of lawsuits can be used as evidence of recklessness.  "Evidence that JRL was filing an average of 150 lawsuits per month, particularly when combined with the evidence that JRL did not verify the merits of those lawsuits even when its contract required it to do so, could tend to show that JRL proceeded to act with indifference to the high probability of injury to Plaintiff." *McCollough v. Johsnson, Rodenberg & Lauinger, 645 F. Supp.2d 917, 928 (D. Mont. 2009)*

One hundred fifty cases per month is less than one-sixth of the monthly volume alleged by Plaintiff. The failure to respond to the Request for the Production of Documents alleged in Docket No.  1-1 ¶37 indicates that they may never have possessed the evidence to review prior to filing the state action against the Plaintiff.  The sum of the allegations made by the Plaintiff point to Citibank and its agent, Farrell & Seldin, taking a "factory approach" to litigation with little regard to the merits of the underlying cases.

(3) The plaintiff's mental distress was extreme and severe: In Docket No. 1-1 ¶¶51 and 52, Plaintiff alleged that he suffered severe stress and anxiety as a result of the actions. Plaintiff did not specify the degree nor the nature.  He simply plead short and plain statements showing that he is entitled to relief.  Neither Citibank nor Farrell & Seldin have attempted to investigate these claims. If taken to trial, Plaintiff will be able to testify that:

  (a) He was diagnosed with panic disorder.

  (b) His mental state was so severe as a result of the state action against him that he

was urged by family members to seek medical help, which he did.

(c) He received prescriptions for Alprazolam (generic for Xanax) and Buproprion (generic for Wellbutrin) as a result of his mental state.

(d) The prescription medications were largely ineffective because the anxiety caused by the stress were so severe.

(e) The continued collection activities after the conclusion of the state action against him caused similar stress and anxiety.

*(See also Docket No. 10 pp. 19-23)* Plaintiff further alleged that having the account sent back to collections after it was dismissed with prejudice caused him further stress and anxiety, which Citibank wrongly trivializes. *See Docket No. 1-1 ¶¶39, 40, 42 and 53 and Docket No. 10 pp. 19-23*

Plaintiff will also release his medical records regarding his mental health once a protective order preventing public disclosure is in place.

(4) There is a causal connection between the defendant's conduct and the claimant's mental distress: Plaintiff alleged facts sufficient to show that Farrell & Seldin did file state action and did attempt to litigate it on behalf of and in the name of Citibank, even after it and its client failed to respond to Plaintiff's discovery requests. *See Citibank v Johnson*

Even should this court agree with Farrell & Seldin and dismiss Plaintiff's IIED claim, this still leaves the Plaintiff to pursue emotional distress damages under the FDCPA, which does not require the same elements be proven as the state tort. *See Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182 (D.Del.1991)*

16

#### IV  Law Offices of Farrell & Seldin Is Not An Attorney-At-Law

Plaintiff is not requesting "an order declaring that Farrell & Seldin register as a collection agency," *(Docket No 8 p. 8)* Plaintiff is requesting that the court declare that Farrell & Seldin " should have been licensed under the New Mexico Collection Agency Regulation Act." *(Docket No. 1-1 p. 11)* While such a declaration as is requested by the Plaintiff could have the same effect as an order, it is to show that Farrell & Seldin has violated the FDCPA and the UPA.

Farrell & Seldin is both a law firm[4] and a collection agency. Farrell & Seldin did not go to law school. Farrell & Seldin did not pass the bar exam to become a member of the New Mexico Bar. It is not an attorney-at-law, but rather an organization that employs attorneys-at-law. The attorneys that it employs, however, presumably did do these things, and it is specifically those attorneys whom NMSA 1978 §61-18A-2 C(6) applies to, and then only when they are acting as attorneys rather than normal debt collectors.

The portion of the New Mexico Collection Agency Regulation Act ("CARA") which Farrell & Seldin cites *(See Docket No 8 p. 8)* to support its position that it is not subject to the licensing requirements set forth by the act is neither unique to New Mexico, nor did it originate in New Mexico. The portion cited, "Any attorney-at-law collecting a debt, as an attorney on behalf of and in the name of a client" (NMSA 1978 §61-18A-2 C(6)) was also once one of the exceptions to the definition of a Debt Collector in the FDCPA prior to its removal by Congress in 1986.[5] New York City's Administrative code at one point

---

[4] "'Firm" or "Law firm" denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization." NMRA 16-100 C

[5] "Second, in 1977, Congress enacted an earlier version of this statute, which contained an express exemption for lawyers. That exemption said that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub. L. 95-109, §803(6)(F), 91

in time also used the exact same language cited by Farrell & Seldin when defining debt collectors.[6] While Plaintiff is unaware of any published opinions to which New Mexico's courts are bound, litigation over this exact language has occurred in other jurisdictions, and thus, there is ample opportunity to look at the rulings of those courts to determine if Farrell & Seldin's assertions regarding this matter are reasonable.

In its ruling on a motion to dismiss in *Scott v. J. Anthony Cambece Law Office, P.C. 600 F.Supp.2d 479 (USDC E.D. New York 2009)*, the court found that attorneys themselves can be subject to the licensing requirements under New York's Administrative Code, §20-490, despite §20-489 having, at least at the time[7], an exception for "Any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client:"

> To the extent that Defendant questions whether an attorney can ever be subject to §20-490's licensing requirement, the Court need not resort to the DCA Letter to answer that question in the affirmative. As noted above, the Administrative Code exempts an attorney from its licensing requirement only where said attorney is "collecting a debt as an attorney on behalf of and in the name of a client." Admin. Code tit. 20, ch. 2, §20-489(a)(5)

In *FTC v. Shaffner, 626 F.2d 32 (7th Cir. 1980)*, the issue arose whether or not an attorney or a law firm was subject to the FDCPA under the exception that was, at the time, set forth by 15 U.S.C. §1692a(6)(F).[8] In its decision, the court found that "While the statute

---

Stat. 874, 875. In 1986, however, Congress repealed this exemption in its entirety, Pub. L. 99361, 100 Stat. 768, without creating a narrower, litigation related, exemption to fill the void." (*Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995))

[6] "As Defendant correctly observes, 20-489(a)(5) of the Administrative Code excludes "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of a "debt collection agency" requiring a license." (*Scott v. J. Anthony Cambece Law Office, P.C. 600 F.Supp.2d 479 (USDC E.D. New York 2009)*)

[7] It appears that the NYC Administrative Code has been changed since Scott v. Cambece, however, "Any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" was clearly the language that was being argued in that case.

[8] As was indicated before, prior to 1986, 15 U.S.C. §1692a(6)(F) was identical to the portion of CARA at issue here, and has since been repealed by Congress.

18

clearly excludes "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of a "debt collector," it does not state that an attorney, by reason of mere possession of a license to practice law, is not subject to the compulsory process of the FTC." The court then went on to explain its reasoning:

> The statutory exclusion does not merely say "any attorney-at-law," it says "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." While the exclusion is not a narrow one, it is readily apparent that Congress did not intend to vest in every attorney a right to be free from investigation. Needless to say, many who hold licenses to practice law, do not practice law, but engage in other businesses. We do not believe Congress intended to shield one debt collection business from investigation simply because it is owned by an attorney, while subjecting other debt collectors to scrutiny by the FTC.

The ruling in *XYZ Law Firm v. Federal Trade Commission, 525 F.Supp. 1235, 1237 (N.D.Ga.1981)* took the position held by the court in *FTC v Shaffner* and expanded upon it. It held that "The mere fact that XYZ is a law firm does not imply that everyone associated with it is an attorney, much less that each person is an attorney acting in every case as an attorney on behalf of and in the name of a client." The same reasoning applies to Farrell & Seldin. Farrell & Seldin has not claimed that while it was "engaging in business for the purpose of collecting or attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," (NMSA 1978 §61-18A-2(C)) every single one of its employees who were involved in the debt collection process were attorneys whom were always acting as attorneys, it simply claimed that the law firm itself is an attorney.

Plaintiff has alleged, and provided evidence that Farrell & Seldin did send a dunning letter to him that contained the sentence "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Plaintiff has also alleged

that the affidavit signed by Shayna Gier was signed on March 16, 2011, *after* the date on the second dunning letter he received. As was stated previously, that, taken in conjunction with his allegation that his RFPs were never answered could lead a reasonable person to conclude that that second letter was not actually a letter from an attorney-at-law who was acting as an attorney because was no meaningful review of the alleged account. If there has been no attorney review of an alleged account prior to sending a dunning letter, that letter was not sent by an "attorney-at-law collecting a debt as an attorney," even if it was sent by a person who did hold a license to practice law. Prior to sending a dunning letter, "[t]he attorney must have sufficient information to satisfy himself that it is proper to send the dunning letter, i.e., he must investigate the merits of the claim before making a demand for payment." *(US v. Central Adjustment Bureau, 667 F.Supp. 370 (N.D. TX 1986))*

In light of how other courts have interpreted the exact language at issue here and the plain language of the statute in question, Farrell & Seldin's assertion that the law firm itself is an attorney, and thus cannot be subject to the licensing requirements set forth by CARA must fail.


## V  Conclusion

Plaintiff has stated sufficient facts and provided sufficient evidence to state a claim. Accordingly, Farrell & Seldin's Motion to Dismiss should be denied.

WHEREFORE Plaintiff requests that this honorable court deny the Defendant's Motion to Dismiss.

Respectfully Submitted,
Jesse Johnson

Jesse K Johnson, Pro Se
9906 Loretta Dr NW
Albuquerque, NM 87114
(505)-897-3364
garand555@comcast.net

This ⟍6th⟍ day of ⟍September⟍, 20⟍12⟍

    I hereby certify that I mailed a copy of this to Justin Breen at Keleher & McLeod at P.O. Box AA, Albuquerque, New Mexico 87103 and to James Grubel at Farrell & Seldin at P.O. Box 31066, Albuquerque, NM 87109 on September 6th, 2012.

Jesse Johnson



Citibank (South Dakota), N.A.
Customer Service Center
P.O. Box 6500
Sioux Falls, SD 57117-6500

April 25, 2007

JESSE K JOHNSON
9906 LORETTA DR NW
ALBUQUERQUE NM  87114-8814

ACCOUNT NUMBER
4223970040865385

Dear JESSE K JOHNSON:

We are unable to change your Citi® Diamond Preferred®
Rewards American Express® account to another product at
this time.  Our records show that a payment made to your
existing account was not honored by your financial
institution at least once in the last four months.

If the payment was returned in error, please send us a
signed letter from the financial institution stating why
the payment was returned.  At that time, we will be
happy to reconsider our decision.

Should you have any questions about this matter, please
call us toll free at 1-800-950-5118.

Sincerely,

S. Larson

S. Larson
Customer Service
FEDERAL REGULATIONS REQUIRE THE STATEMENT PRINTED ON THE
REVERSE SIDE

# EXHIBIT "A"

O/L0/430011/001/ZZ/SY/ZP/8000/SYSTEMB /I2007042580021442/10400

A member of citigroup