**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

**JESSE K. JOHNSON**,

       Plaintiff,

v.                              **Civ. No. 12-0877 MV/RHS**

**LAW OFFICES OF FARRELL AND SELDIN;
CITICORP CREDIT SERVICES, INC., and
CITIBANK, N.A.,**

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the *Citibank Defendants' Motion to Dismiss*, filed August 21, 2012 [Doc. 5], and on the *Motion to Dismiss Plaintiff's First Amended Complaint Against Farrell & Seldin*, filed August 22, 2012 [Doc. 7].  Defendants bring their motions under Federal Rule of Civil Procedure 12(b)(6).  Except for granting the dismissal of one claim against Farrell & Seldin, the Court will deny the motions.

**I.    APPLICABLE LAW**

When resolving a motion to dismiss brought under Rule 12(b)(6), the Court accepts

> as true all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff.  The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.

*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotation marks omitted).  The Court determines whether the complaint contains "'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, the Court will disregard statements that are nothing more than legal conclusions "not entitled to the assumption of truth" and will determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 681. In resolving the motions to dismiss, the Court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (internal quotation marks omitted). Thus, the Court may "consider not only the complaint itself, but also attached exhibits." *Smith*, 561 F.3d at 1098.

Because this is a diversity case, the Court applies federal procedural law, but applies New Mexico's substantive law to the state-law claims. *See Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002) ("A federal court sitting in diversity applies the substantive law of the forum state."); *Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question whether judgment as a matter of law is appropriate.").

## II.    FACTUAL BACKGROUND

The parties have stipulated to the dismissal with prejudice of all of pro-se Plaintiff Jesse K. Johnson's claims against Citicorp Credit Services, Inc. (USA). *See* Doc. 13. In April 2012, Johnson filed a complaint seeking damages and injunctive and declaratory relief against the Law Offices of Farrell and Seldin ("the Attorneys") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, in state court, which the Attorneys removed to this Court. *See* Doc. 1; Am. Compl.at 2, ¶ 6. Johnson's Amended Complaint also states that Citibank and the

2

Attorneys violated the New Mexico Unfair Practices Act, N.M.S.A §§ 57-12-1 through -26 ("UPA"), and committed the state-law tort of intentional infliction of emotional distress. In addition, Johnson contends that Citibank committed the state-law tort of malicious abuse of process.

### A. Allegations in the Amended Complaint[1].

Johnson states that the Attorneys "specialize[] in debt collection," and regularly "attempt to collect" consumer debts in New Mexico. Am. Compl. at 2, ¶ 3 (Doc. 1-1). Acting on behalf of Citibank, Attorneys sent Johnson a "dunning letter" on February 27, 2011 regarding Johnson's credit-card account with Citibank. *Id.* at 3, ¶ 9. The letter contained a "*Greco* disclaimer[2]" stating that "[a]t this time no one with this firm has reviewed the particular circumstances of your account." *Id.*, ¶ 10. On March 11, 2011, the Attorneys sent to Johnson a second "dunning letter," which did not contain the disclaimer, and which offered to settle the outstanding debt for a lump-sum payment of 75% of the debt due and warned Johnson that Citibank would "consider all its legal remedies." *Id.* ¶¶ 11, 12. On March 30, 2011, the Attorneys sent to Johnson a second dunning letter, which also did not contain the disclaimer. *See id.* at 3-4, ¶ 13.

In May 2011, Citibank, represented by the Attorneys, filed a lawsuit in New Mexico state

---

[1] The Defendants have filed their motions to dismiss without bothering to set out the factual allegations in the Amended Complaint that relate to each claim for which they seek dismissal. As the moving party asserting an affirmative defense, the Defendants bear the initial burden of demonstrating that they are entitled to dismissal because "the specific allegations in the complaint [do not] plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007). Here, the Defendants draw legal conclusions without referring to the specific allegations in Johnson's Amended Complaint that support his claims for relief, causing the Court to have to do their work for them.

[2] The term "*Greco* disclaimer" comes from the case of *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005), in which the Second Circuit found no FDCPA violation in the circumstances in which the attorney dunning letter included a disclaimer stating: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account."

court ("the state-court collection action") alleging that Johnson had failed to pay on his credit-card account as agreed, and that the balance due on the account was $4,479.82. *See id.* at 1, ¶ 1; *id.* at 4, ¶ 14. Citibank attached to its complaint an affidavit from Shayna Gier, a Citicorp Credit Services, Inc. ("Citicorp") employee. *Id.* at 4, ¶17. Johnson alleges that the affidavit contained inconsistencies regarding how much the outstanding debt exceeded Johnson's credit limit, thereby indicating that his debt may have been less than that stated in the complaint. *Id.* at 4, ¶17.

On June 14, 2011, the Attorneys sent Johnson another letter titled "Settlement Offer," in which Citibank indicated that the "account balance" was $4660.82 , which appears to be the original amount of the debt plus filing fees and service-of-process costs and not the actual account balance. *Id.*, ¶¶ 18, 19. Johnson filed an answer to Citibank's complaint, and the case was referred to arbitration, which was scheduled for October 4, 2011. *See id.* at 5, ¶¶ 23, 26. At a pre-arbitration hearing, Johnson told the Attorneys that he had "a mental illness." *Id.* ¶ 25. Johnson served an amended answer and discovery requests on Citibank, through the Attorneys, on August 24, 2011. *Id.* at ¶ 27. Johnson requested that Citibank provide Johnson with "an itemized accounting" of his credit-card account since its inception; a copy of his signed credit-card application; a copy of his last payment as alleged in Citbank's complaint; a copy of the cardholder agreement and its amendments; details on the Citicorp employee who provided the affidavit attached to the complaint, including her job duties and performance; and information about Citibank's and Citicorp's policies on preparing such affidavits and the reliability of its record-keeping practices. *Id.* at 5-6, ¶ 28. Johnson agreed to extensions of time in which Citibank could produce the requested information before the October 4, 2011 arbitration. *See id.* at 6, ¶¶ 29-31. When the Attorneys did not meet the discovery deadline, the arbitration was rescheduled for October 18, 2011. *See id.* ¶ 32. After Citibank produced only responses to Johnson's request for admissions that were, in Johnson's view, "inadequate" Johnson

4

wrote a letter to the Attorneys, accusing them of not acting in good faith and of failing to timely respond to interrogatories and requests for production. *Id.* at 7, ¶ 33.  He sent a copy of this letter to the arbitrator. *See id.*  Through its Attorneys, Citibank sent Johnson its answers to interrogatories, which Johnson considered to be "deficient," on October 4, 2011. *Id.,* ¶¶ 34-35.  Citibank never produced the documents Johnson requested, but the Attorneys phoned Johnson on October 11, 2011, asking him if he opposed a dismissal with prejudice of Citibank's claims, and Johnson did not oppose the dismissal. *Id.*, ¶¶ 36, 37.  Accordingly, the state district-court judge dismissed Citibank's complaint with prejudice on December 2, 2011. *Id.* ¶ 38.

But on January 3, 2012, Johnson began receiving "a series of calls from United Collection Bureau (UCB) allegedly on behalf of Citibank," which "persisted for three days." *Id.*, ¶¶ 39, 40. UCB also sent Johnson a letter stating that he was "indebted to Citibank for the same amount listed in the [state-court collection] complaint" and listed the same credit-card account number. *Id.* at 8, ¶ 41.  Johnson discovered that Citibank still reported his "alleged debt" on his credit report. *Id.*, ¶ 42.

Johnson contends that, although the Attorneys stated in their dunning letter that "this communication is from a debt collector," his search of relevant licensing databases indicated that they are not licensed as a collection agency, as required by the Collection Agency Regulatory Act, NMSA 1978 61-18A-1 through -33. *Id.*, ¶¶ 45, 46.

Johnson states that he "suffered severe stress and anxiety as a result of the Defendants' actions and even felt physically ill for days at a time due to the stress and anxiety," and did not "feel normal until approximately three weeks after he had been notified that the [state-collection] case would be dismissed with prejudice." *Id.* at 9, ¶¶ 51, 52.  And he alleges that the "continued collection activities have caused [him] further mental anguish and frustration." *Id.*, ¶ 53.  Johnson

5

alleges that the Defendants filed the state-collection action "without first diligently reviewing the facts," *id.* at 1, ¶ 1, and that, therefore, Citibank "lacked probable cause to file the complaint" against him in May 2011, *id.* at 9, ¶ 55. He believes that the Defendants simply "rely on a high number of default judgments rather than ensuring that their causes of action are justified before filing." *Id.*, ¶ 56.

Johnson attached an affidavit and several exhibits to his Amended Complaint, including the letters he received from Citibank, its Attorneys, and the UCB; letters and some filings from the state-court collection action; and copies of entries from Shayna Gier's personal blog in which she documents her activities as Citicorp's employee. *See* Am. Compl., Exs. A-I. Johnson's affidavit states that his research of the state-district court's database shows that the four attorneys licensed in New Mexico who work for Farrell & Sheldin filed over 3000 collection cases in the three-month period of February 1, 2011-May 2, 2011, which he contends shows that the Attorneys could not have diligently reviewed the information it used to prosecute Citibank's collection efforts against him. *See* Affidavit at 3-4. His exhibits demonstrate that he asked Citibank to admit that Shayna Gier had a quota to meet in preparing affidavits for collection purposes. *See* Am. Compl., Doc. 1-2 at 6-7. Ms. Gier's October 2009 blog discussed how Citicorp required her to meet a daily quota in "verifying as many affidavits as I possibly could," and that when she did not make the quota, she was placed on an "overtime freeze." *Id.* Doc. 1-3 at 5. She stated that she had prepared "close to the highest number of affidavits" but that she still had not been able to meet the quota. *Id.* Her November 4, 2009 blog stated that the quota was 37 affidavits per hour, but she had been able to prepare only "30 per hour." *Id.* at 12. She stated that her failure to "mak[e] goal" also meant that she "gets no raise next year," and that she earned less that "9 dollars an hour." *Id.*

In Count I, Johnson contends that the Attorneys' actions violated §§ 1692e, e(2)(a), e(3),

e(5); §§ 1692f and f(1); and § 1692g(b) of the FDCPA.  *See* Am. Compl. at 10, ¶ 58.  Count II

alleges that the Defendants violated §§ 57-12-2D(14) and 57-12-2E(1) of the New Mexico UPA by

willfully engaging in unlawful trade practices.  *See id.*, ¶¶ 60, 61.  Count III asserts a state-law cause

of action for intentional infliction of emotional distress against all Defendants.  *See id.* at 11, ¶ 64.

And Count IV asserts a state-law cause of action for malicious abuse of process against Citibank.

*See id.*, ¶66.

## III.   ANALYSIS

Citibank seeks dismissal of the all the state-law claims, *see* Doc. 5 at 1; the Attorneys seek

dismissal of all claims, *see* Doc. 8.  Both Defendants assert that Johnson's Amended Complaint

"does not contain any facts regarding any specific conduct by Citibank directly, aside from vague

allegations about the propriety of a previously filed collection action against Plaintiff," and that it

"fails to allege factual allegations sufficient to reach the minimum pleading standard" articulated

in *Twombly*, 550 U.S. at 555.  *See* Doc. 5 at 1; Doc. 8 at 1.

### A.  The UPA claim.

To state a claim for violation of the UPA,

> the complaining party must show that the party charged made an oral or written
> statement, visual description or other representation that was either false or
> misleading. Second, the false or misleading representation must have been
> knowingly made in connection with the sale, lease, rental or loan of goods or
> services in the extension of credit or . . . collection of debts. Third, the conduct
> complained of must have occurred in the regular course of the represeter's trade or
> commerce.  Fourth, the representation must have been of the type that may, tends
> to or does, deceive or mislead any person.

*Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) (internal quotation

marks and citations omitted).  A "false representation" by a bank that misleads an individual "into

believing they were liable . . . on the contract when they were not . . . fits within the statutory

definition of an unfair practice, which includes 'stating that a transaction involves rights, remedies or obligations that it does not involve.' Section 57–12–2(D)(15)." *Jaramillo v. Gonzales*, 132 N.M. 459, 467, 50 P.3d 554, 562 (Ct. App. 2002) (noting that "the Bank misled Plaintiffs by telling them they were still responsible for payment even after acceptance was revoked").

Citibank's and the Attorneys' "analysis" in their briefs-in-chief on the issue whether Johnson's Amended Complaint states a claim for violation of the UPA each contain one conclusory statement: "the Complaint does not specifically identify any false or misleading statements, or acts, which were allegedly knowingly made in the regular course of Citibank's business."  Doc. 5 at 4; Doc. 8 at 7 ("Plaintiff's Complaint does not specifically identify any false or misleading statement, or acts, which were knowingly made in the regular course of F&S's business.").

In response, Johnson asserts that his allegations state that Citibank used a "deceptive" affidavit to initiate its state-collection action.   Doc. 10 at 2.   As examples of the deceptive statements, he quotes from Ms. Gier's blog (which he had attached to his Amended Complaint) about the quotas she must meet, and Johnson contends that, at the rate of 30 affidavits/hour, she could have spent only two minutes verifying information from his credit-card accounts, which would not permit sufficient time for her to actually verify all the information in the account.  *See id.* at 12-13.  Johnson also asked the Court to take judicial notice that the affidavit Gier supplied is similar to other, "mass-produced" affidavits that are typed on a form with a blank space for the affiant's name to be "rubber stamped in." *Id.* at 13.  Defendants, who filed a joint reply brief, do not respond to these arguments other than to suggest that the Court should only address allegations in the complaint and "ignore factual detail added by Plaintiff in [his] response."  Doc. 14 at 1.  Defendants fail to acknowledge, however, that the Court may consider the exhibits attached to the Amended Complaint, including Johnson's affidavit that gave more factual detail about his claims. *See Smith*,

8

561 F.3d at 1098.

Johnson further points out that Gier's affidavit stated that the credit limit on his account was $ 2600 and that the amount over the credit limit was listed as $894.52, but those two numbers do not add up to the $ 4479.82 balance that the state-court collection complaint alleged to be due. *Id.* at 14.  He also notes that Citibank is liable for the actions of its attorney-agents, and that the Attorneys failed to produce any account records to support Citibank's collection efforts in the state-court action, but instead deceptively told him they were going to produce them but never did, *id.* at 5-6, 14-15, from which a jury could infer that the account records did not support the amount for which Citibank brought suit.  He argues that a jury could infer from these facts that "not one person actually looked at Citibank's records pertaining to the alleged account that was the subject of the state action . . . except possibly to verify that the account number, balance, and name matched up," before the Attorneys sent dunning letters and Citibank filed suit.  *Id.* at 14-15.

In reply, Defendants note only that Johnson stated in his brief that he "takes no position as to whether the alleged debt was ever valid," and they contend that the inconsistent number the affidavit supplied regarding the amount of the debt is "irrelevant" because the "billing statement clearly indicates that both the minimum payment due and new balance is $4,479.82."  Doc. 14 at 3.  But no billing statement is attached to the Amended Complaint, nor have Defendants attached one, so the Court cannot consider counsel's mere allegations as evidence to defeat the allegations in Johnson's sworn complaint and affidavit.

The Court concludes that Johnson's allegations showing that (i) Gier likely spent only two minutes reviewing any account information and swore to inconsistencies in her affidavit indicating that Johnson may actually have owed only $3,494.52 instead of the $4,479.82 set forth in the state-court collection complaint, dunning letters and settlement offers; (ii) the Attorneys stated they had

9

never examined any accounts before sending the first dunning letter but implicitly indicated that they **had** examined the accounts in their subsequent communications by leaving out the *Greco* disclaimer, but a jury could imply from their staggering caseloads (3-4 attorneys filing over 3000 complaints in the three-month period between February and May 2011) that they had, in fact, never ascertained the proper amount of Johnson's outstanding debt; (iii) after the complaint had been filed, the Attorneys sent him a June 9, 2011 "settlement offer" misrepresenting that the "account balance" was a higher amount; (iv) together with his allegations that the Attorneys and Citibank subsequently refused to produce any records that would validate Johnson's debt and instead requested a dismissal with prejudice of its complaint, thereby forever barring it from collecting on any alleged debt, are sufficient to establish a plausible claim for relief for misrepresentation against Citibank and the Attorneys under the UPA.

Further, the Court notes that Johnson alleges that the UCB, another debt collector acting on behalf of Citibank, sent him another letter attempting to collect the debt on January 4, 2012 and began calling him to collect the debt, a month after Citibank's complaint had been dismissed with prejudice. *See* Doc. 12 at 16; Am. Compl. ¶¶ 39-53. By transferring or selling Johnson's account to a debt collector after judicial collection was forever foreclosed by the state-court judgment, Citibank implicitly misrepresented both to the debt collector and to Johnson that it could still legally collect the debt. Johnson has stated a claim for violation of the UPA against Citibank for this misrepresentation. *See Jaramillo*, 132 N.M. at 467, 50 P.3d at 562.

**B. The FDCPA claims.**

Because Citibank does not meet the definition of "debt collector" but the Attorneys do, Johnson properly brings his FDCPA claims against only the Attorneys. He contends that the Attorneys' actions violated §§ 1692e, e(2)(a), e(3), e(5); §§ 1692f and f(1); and § 1692g(b) of the

FDCPA.

**1.  Claims under § 1692(e)(2)(a), e(3), and e(5).**

Section 1692e prohibits false or misleading representations.  It provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . . .

(2) The false representation of--

(A) the character, amount, or legal status of any debt; []
. . . .
(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
. . . .
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

§1692e.

In order to establish a violation of the FDCPA, a plaintiff must demonstrate three elements: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Russey v. Rankin*, 911 F. Supp. 1449, 1453 (D.N.M. 1995) (Vázquez, J.); *Maynard v. Cannon*, No. 08–4181, 401 Fed. App'x 389, 393, 2010 WL 4487113, *3 (10th Cir. Nov. 10, 2010) ("To prevail on a claim under the FDCPA, a plaintiff must prove that a 'debt collector['s]' effort to collect a 'debt' from a 'consumer' violated some provision of the FDCPA.").  It is clear that Johnson has alleged facts to show that the Attorneys are debt collectors, that he is a consumer, and that the Attorneys were seeking to collect a debt.  The only question, therefore, is whether he has alleged sufficient facts to show that the Attorneys plausibly violated some provision of the FDCPA.

The Tenth Circuit Court of Appeals has noted that

11

> other circuit courts of appeal have applied an objective standard, "measured by how
> the 'least sophisticated consumer' would interpret the notice received from the debt
> collector." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). "[T]he test is
> how the least sophisticated consumer-one not having the astuteness of a
> "Philadelphia lawyer" or even the sophistication of the average, everyday, common
> consumer-understands the notice he or she receives." *Id*. . . . .The hypothetical
> consumer, however, "can be presumed to possess a rudimentary amount of
> information about the world and a willingness to read a collection notice with some
> care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

*Ferree v. Marianos*, No. 97-6061, 1997 WL 687693, *1 (10th Cir. Nov. 3, 1997) (unpublished).  It

appears that five other circuits have applied this test in the context of analyzing § 1692e violations.

*See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (gathering cases from the Third, Sixth,

Ninth, and Eleventh Circuits).  For example, "a collection notice is deceptive when it can be

reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v.

Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).  The question whether a representation would mislead

the least-sophisticated consumer is generally a question of fact for a jury. *See McMillan v.

Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

The Attorneys contend that Johnson failed to specify how it "made false or misleading

statements in connection with the collection of a debt."  Doc. 8 at 3-4.  The Court finds, however,

that the same allegations that were sufficient to state a claim under the UPA against the Attorneys

discussed above are also sufficient to state a claim against them for violation of § 1692e and e(2)(a).

*See* Doc. 12 at 3-5.

In his response brief, Johnson also cites *Clomon v. Jackson*, 988 F.2d 1314, 1317-20 (2d Cir.

1993) (holding, that in circumstance where attorney had no direct personal involvement in the

mailing of the letters to the plaintiff or to any other debtor and the attorney "never considered the

particular circumstances of Clomon's case prior to the mailing of the letters and he never

participated personally in the mailing"  the use of the attorney's letterhead and his signature on the

collection letters was sufficient to give the consumer the false impression that the letters were communications from an attorney and violated § 1692e(3)), and *Avila v. Rubin*, 84 F.3d 222, 228-29 (7th Cir.1996) (holding that, where attorney who signed dunning letters on his letterhead did not review the debtor's file and was "not personally or directly involved in deciding when or to whom a dunning letter should be sent[,] [t]here is no true "judgment" being rendered here by a real attorney" that the attorney "violated § 1692e(3) and (9) because his collection letters create the false and misleading impression that the communications were from an attorney when, in fact, they were not really 'from' an attorney in any meaningful sense of the word"). *See* Doc. 12 at 3-5. Johnson contends that, as in those cases, the letters the Attorneys sent to him were mass produced and signed, printed on the Attorneys' letterhead, mailed from Colorado, and purported to be from an attorney, but that they were not actually from an attorney who had any personal involvement in the case, in the true sense of the word, thereby violating § 1692e(3). *See* Doc. 12 at 3-5. Attorneys do not respond to this argument other than to state that "Plaintiff failed to identify any facts which lead to the conclusion that F&S's caseload caused an FDCPA . . . violation." Doc. 14 at 3.

Johnson further contends that, in ¶¶ 45-46 of his Amended Complaint, he alleged that the Attorneys violated sections 1692e, e(5), and (f) of the FDCPA by misrepresenting that they are a "debt collector," because New Mexico requires that "[n]o person shall . . . engage within the state in the business of collecting claims for others . . . or seek to make collection or obtain payment of any claim on behalf of another without having first applied for and obtained the licenses required by the Collection Agency Regulatory Act." N.M.S.A. 1978, § 61–18A–5(A). *See* Doc. 12 at 9-10. Attorneys respond that they are specifically exempt from licensure under N.M.S.A. 1978, § 61-18A-2(C)(6), which states that the term "collection agency" does not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Doc. 14 at 6-7. But the

13

Attorneys' first dunning letter conveyed both that law firm was acting as an attorney that "represents the above-referenced creditor" and that payments should be made "payable to Citi," while at the same time stating that "no attorney with this firm has personally the particular circumstances of your account" and that "this communication is from a debt collector," as opposed to an attorney representing Citibank.  The "Notice of Settlement Offer" sent on March 9, 2011, before the state-court litigation was filed, noted that the "account is in default" and warned that "our client will consider all its legal remedies," and that "our client has authorized this firm to settle this account with you," but also stated that "[t]his communication is from a debt collector." Am. Compl. at 20. But the second "Notice of Settlement Offer," sent on June 9, 2011, *after* these Attorneys had already filed suit on behalf of Citibank in state court stated that Johnson's account "has been placed by our client with this office," similarly warned that "our client will [] review all its legal options, if agreeable payment arrangements have not been made with this office," but stated that "this communication is from a debt collector" even though the notice indicates that it was being sent by the attorney representing Citibank in the state-court litigation.   If Attorneys were acting only as "debt collectors" and not as attorneys who had actually evaluated the case in sending the dunning letters, and notices of settlement offer, then they may not have been "collecting the debt as an attorney on behalf of and in the name of a client" as defined in § 61-18A-C(2)(6).  And if they were actually acting as attorneys but representing they were only "debt collectors" by their express statements, they may have violated § 1692e.  *See* Doc. 12 at 10-11 (Johnson's contentions that the second and subsequent dunning letter and other communications making settlement offers indicated that the Attorneys were acting as attorneys, not as debt collectors, because the letters omitted the disclaimer and implied threatened legal action by "our client."); Am. Compl. at 20 (Doc. 1-1 at 20,

21, 22)[3].  The Fifth Circuit has stated:

> We caution lawyers who send debt collection letters to state clearly, prominently,
> and conspicuously that although the letter is from a lawyer, the lawyer is acting
> solely as a debt collector and not in any legal capacity when sending the letter.  The
> disclaimer must explain to even the least sophisticated consumer that lawyers may
> also be debt collectors and that the lawyer is operating only as a debt collector at that
> time.  Debt collectors acting solely as debt collectors must not send the message that
> a lawyer is involved, because this deceptively sends the message that the "price of
> poker has gone up."

*Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009) (quoting *Avila v. Rubin*, 84 F.3d 222 (7th

Cir.1996)).

> "[A]ttorneys can participate in debt collection in any number of ways, without
> contravening the FDCPA, so long as their status as attorneys is not misleading."
> When a lawyer sends out a debt collection letter, he or she must either have
> determined that the claim is valid and the debtor is delinquent, or the letter must
> make clear that no attorney has made that determination.  In *Greco v. Trauner,
> Cohen & Thomas, L.L.P.*, the court concluded that a debt collection letter on attorney
> letterhead which included a disclaimer stating that "at this time, no attorney with this
> firm has personally reviewed the particular circumstances of your account" would
> not lead the least sophisticated consumer upon reading the letter to believe the
> attorney had evaluated the case and made a recommendation regarding the validity
> of the creditor's claims.  However, the court reached its holding after considering
> the context of the disclaimer in light of the entirety of the letter and determining that
> "[n]othing else in the letter confused or contravened [the] disclaimer of attorney
> involvement."

*Martinez v. Johnson*, No. 2:11cv157–DN, 2013 WL 1031363, *9 (D. Utah March 14, 2013)

---

[3] It appears that the two documents titled "NOTICE OF SETTLEMENT OFFER" - one sent
before litigation was begun in state court and the other sent after Citibank, through the Attorneys,
filed the state-court collection action, are signed by Thomas Farrell (with a rubber-stamp type
signature that is exactly the same on both documents), who is not licensed to practice law in New
Mexico, instead of Barry Seldin, who is licensed to practice law in New Mexico.  *Cf.* Am. Compl.
at 20 and 22 (Farrell) *with id.* at 21 (second dunning letter allegedly sent by Seldin).  And the first
dunning letter contains only a scribble instead of a signature.  *See* Am. Compl. at 19.  The scribble
does not resemble the signature of either attorney on any of the documents the Attorneys mailed to
Johnson from Colorado, nor does it resemble the distinctive scribble that Seldin has used in the past
in "signing" documents he has filed in this Court as an attorney.  *Cf.* Am. Compl. at 19 *with* No.
06cv1249 LH/WPL Doc. 6 at 2, Doc. 5 at 1, and Doc. 8 at 2; No. 07cv0657 ACT/WDS, Doc. 12 at
10.

(footnotes omitted) (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005) and citing *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. Mar. 17, 1993)).  "Inclusion of a disclaimer of attorney involvement is not an absolute defense to potential liability under 1692e. Indeed, the disclaimer may be insufficient if the remainder of the letter contains statements that could be construed by the least sophisticated consumer to imply attorney involvement in validating and collecting the debt." *Martinez*, 2013 WL 1031363 at *9 & n.60 (citing "*Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009) (noting that "[a]lthough the mere presence of disclaimer language might be dispositive in certain circumstances, the context and placement of that disclaimer is also important.")").

Thus, under circumstances like the one in this case, "where the letter does not clearly explain the role of the attorneys who authored the letter – were the defendants threatening legal action to collect a sum certain debt, or were they merely beginning the process to confirm and collect the debt?," and "[t]he letter sends mixed messages" by making "contradicting statements," other courts have held that the letter "may leave the false impression that the amount set forth is due and owing, has been validated, and legal action will be pursued by [the creditor] unless the debt is paid," and that, therefore, "[t]he court cannot determine, as a matter of law, whether the language of the letter . . . violated 15 U.S.C. § 1692e," so the "issue is for a jury." *Martinez*, 2013 WL 1031363, *9-*10. The Court will not dismiss these claims.

### 2. Claims under § 1692f.

Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  The statute lists eight examples of the kinds of behavior that will violate this section. *See id.* at § 1681f(1)-(8). The Attorneys contend that Johnson "fails to identify any action that could be considered unfair or unconscionable." Doc. 8 at 5.  In his response, citing

16

several cases, Johnson contends that "an attorney filing a lawsuit without giving any meaningful review to the account in question is a violation of § 1692f."  Doc. 12 at 7-8.  The Court will not dismiss this claim.

### 3.  Claims under § 1692g(b).

Section 1692g(b) provides:

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, . . .  the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . , and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Attorneys contend that Johnson failed to explain how the letters and communications it sent to him violate this section of the FDCPA.  *See* Doc. 8 at 6.  Johnson contends that, by not giving him an opportunity to request validation of the debt before it sent the March 9, 2011 notice of settlement offer that appeared to be an attorney communication threatening suit, the Attorneys "overshadowed" his rights in violation of § 1692g(b)'s prohibition that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt."  Doc. 12 at 10-11.  He states that the "notice of settlement offer" was intended to escalate the parties' interactions from mere debt collection to involvement with an attorney that would "get the debtor's knees knocking."  *Id.* at 11 (quoting *Avila*, 84 F.3d. at 228-29).  The Attorneys do not reply to this argument.  The Court will not dismiss this claim.

17

### C.        The malicious-abuse-of-process claim.

Johnson sues only Citibank for malicious abuse of process under state law.  In *Durham v. Guest*, 145 N.M. 694, 204 P.3d 19 (2009), the New Mexico Supreme Court held that this tort has only three elements: (i) "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge;" (ii) "a primary motive in the use of process to accomplish an illegitimate end;" and (iii) damages.  *Id.* at 701, 204 P.3d at 26.  In developing the meaning of the first element, the Court held that

> [a]n improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt.  Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts.

*Id.*  "[A] malicious- abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim."  *Devaney v. Thriftway Marketing Corp.*, 124 N.M.512, 522, 953 P.2d 277, 287 (1997), *abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux*, 142 N.M. 150, 164 P.3d 31 (2007).

> Probable cause in the malicious abuse of process context is defined as a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury.  The lack of probable cause must be manifest.  The existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial judge . . . if the facts and inferences therefrom are undisputed.

*Fleetwood Retail Corp.*, 142 N.M. at 154, 158, 164 P.3d at 35, 39 (internal quotation marks and citations omitted).  Citibank contends that Johnson's Amended Complaint fatally "fails to allege that

the primary purpose of filing the State Complaint was to accomplish an illegitimate end."  Doc. 5 at 6.  Citibank also contends that, "on its face, the State Complaint shows that there was probable cause to bring the suit."  *Id.*  But again, however, the state complaint was not attached to Johnson's Amended Complaint, and Citibank has not bothered to make it an exhibit to its motion to dismiss. The Court must, therefore, reject this argument.

In response, Johnson points to allegations in his Amended Complaint showing that Citibank's "pre-filing investigation" was not reasonable because (i) Gier most likely only spent a maximum of two minutes looking at his single account statement, and (ii) her affidavit inconsistently indicated two different amounts for Johnson's account balance, and (iii) Citibank's attorneys did no personal investigation before filing the suit.  He also points out that he presented factual allegations that (iv) Citibank abused the discovery process by unfairly delaying discovery before the arbitration hearing was held to unfairly prejudice him at arbitration, and (v) falsely telling him it was going to produce records that it never produced and then moving for dismissal with prejudice, which indicates it did not actually have sufficient proof to establish his correct account balance.  *See* Doc. 10 at 10-16.  A jury could infer that Citibank had a "primary motive in the use of process to accomplish an illegitimate end," *Durham*, 145 N.M. at 701, 204 P.3d at 26, from the facts indicating that it did not have proof of the debt it alleged Johnson owed, but tried to stall discovery in the hopes that Johnson would give up or default on the suit.  The Court will not dismiss this claim because sufficient facts are alleged to state a plausible claim for malicious abuse of process.

### D.  The claim for intentional infliction of emotional distress.

Johnson brought this claim against both Defendants.  To state a claim for the intentional infliction of emotional distress, the plaintiff must allege facts to support the following elements:

19

(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress. . . . [E]xtreme and outrageous conduct [is] that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . .

As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court.

*Trujillo v. N. Rio Arriba Elec. Co-op.*, 131 N.M. 607, 616-17, 41 P.3d 333, 342-43 (2002) (internal quotation marks and citations omitted). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts § 46 cmt. d.

Defendants conclude that Johnson "has not alleged any conduct rising to the level of being beyond all possible bounds of decency." Doc. 5 at 5; Doc. 8 at 8. Johnson contends that Citibank's act of sending his account to another collection agency after it had already dismissed its collection action with prejudice (making it uncollectible), while knowing that the agency would begin again the unlawful process of trying to collect the debt, meets that standard, especially in light of the fact that Johnson told Citibank's Attorneys at the pre-arbitration hearing that he had a mental condition. The Court is inclined to agree with Johnson that reasonable minds may differ on the question of the outrageousness of Citibank's action in those circumstances. The Court concludes that Citibank's conduct "reasonably" may be regarded as outrageous, and the issue may go to a jury.

The same thing may not be said regarding the Attorneys, however, because no allegations indicate that it had anything to do with Citibank's decision to transfer the case to another debt collector. The Court will dismiss the intentional-infliction-of-emotional distress claim against the

20

Attorneys.  The Court notes, however, that Johnson may recover emotional-distress damages as part of a successful FDCPA or UPA claim.  He may not, however, receive more than one recovery for any injury.

**E.  Johnson's actions are not barred for failure to raise compulsory counterclaims in the state-court collection action.**

Citbank contends that all of Johnson's actions against it are barred because he "failed to raise them in the state collection action" and therefore "has forever waived them" under Rule 13 of New Mexico's rules of civil procedure.  Doc. 5 at 7.  Once again, Citibank raises arguments that depend upon the existence of exhibits attached to the complaint from which the Court may ascertain the correctness of Citibank's allegations, or upon referenced exhibits that Citibank may attach to its motion to dismiss – which Citibank did not bother to do.  On that basis alone, the Court should deny the motion.  *See Gee*, 627 F.3d at 1186.

The motion should also be denied on the merits.  Rule 13(A)(1) provides that "[a] pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:[] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and [] does not require adding another party over whom the court cannot acquire jurisdiction."

> The purpose of the rule is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Const. Co., Inc. v. Pickard*, 371 U.S. 57, 83 S. Ct. 108, 9 L. Ed. 2d 31 (1962).  In *Ortega, Snead, Dixon & Hanna v. Gennitti*, 93 N.M. 135, 597 P.2d 745 (1979) our Supreme Court, quoting *Scott v. United States*, 354 F.2d 292, 173 Ct.Cl. 650 (1965), stated:

>> The overriding emphasis is on consolidation and the expeditious resolution (**where that is fair**) of all the claims between the parties in one proceeding. * * The controlling philosophy is that, so far as fairness and convenience permit, the various parties should be

> allowed and encouraged to resolve all their pending disputes within
> the bounds of the one litigation.

*Heffern v. First Interstate Bank*, 99 N.M. 531, 533, 660 P.2d 621, 623 (Ct. App. 1983) (emphasis

added).  The Court of Appeals held that Rule 13(a) applies to bar subsequent suits "where the prior

action ended in a default judgment, or a stipulated judgment," or a settlement agreement.  *Id.*  Of

course, Citibank's action against Johnson did not end in a default judgment, stipulated judgment,

or settlement agreement.  It ended before it even made it to the initial arbitration, with Citibank

dismissing its action with prejudice.  And if litigation had continued after arbitration, it seems

probable that the state court would have permitted Johnson, a pro-se party, to amend his answer to

include any compulsory counterclaims.

　　　Without referring to the specific allegations in the Amended Complaint, Citibank summarily

contends that Johnson's "claims against Citibank in the present action arise out of vague allegations

about Citibank's conduct during, and leading up to, the State Action."  *Id.*  Of course, even a brief

review of the allegations in the Amended Complaint demonstrate that this is not true.  Johnson's

claims for malicious abuse of process and intentional infliction of emotional distress include specific

actions that Citibank took **after it** filed suit, including its actions during discovery, and its action in

dismissing the suit with prejudice and then selling or transferring the account to another collection

agency.  In its reply brief, Citibank contends that, "all of Plaintiff's claims hinge on whether he

incurred the underlying debt."  Doc. 14 at 8.  Again, Plaintiff's actions do not "hinge" on whether

he owed a debt to Citibank.  The issues regarding the UPA and state-law tort claims center around

Citibank's alleged failure to conduct a reasonable pre-filing investigation to ascertain the exact

amount of Johnson's debt, its actions in apparently directing the Attorneys to implicitly threaten

legal action while offering to settle during the 30-day statutory validation period, its actions during

the discovery process, and its actions after it dismissed the collection action with prejudice.  The Court will deny the motion to dismiss Johnson's claims against Citibank.

      **IT IS ORDERED** that *Citibank Defendants' Motion to Dismiss* [Doc. 5] is DENIED;

      **IT IS FURTHER ORDERED** that Farrell & Seldin's *Motion to Dismiss Plaintiff's First Amended Complaint* [Doc. 7] is DENIED in part and GRANTED in part; and

      **IT IS FURTHER ORDERED** that Plaintiff Jesse K. Johnson's state-law claim for intentional infliction of emotional distress against Defendant Farrell & Seldin is dismissed with prejudice.

      **DATED** this 29th day of March, 2013.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for parties*:

Jesse K. Johnson, pro se
9906 Loretta Drive NW
Albuquerque, New Mexico 87114


*Attorneys for Citibank N.A.*:

Keleher & McLeod
Justin B. Breen
P.O. Box AA
Albuquerque, New Mexico 87103

*Attorneys for Law Offices of Farrell & Seldin*:

Farrell & Seldin
James J. Grubel
Kenneth K. Oh
P.O. Box 31066
Albuquerque, New Mexico 87110